## McDONALD *v.* DONALDSON *et al.*

*(Circuit Court, D. Washington, W. D.* October 14, 1891.)

1. PARTITION OF SYNDICATE LANDS—EFFECT OF INVALID VOLUNTARY PARTITION.
Where the members of a syndicate who are tenants in common of equal undivided interests in a tract of land attempt to effect a subdivision thereof by conveying to each member a specific proportional part, but by reason of defective execution the deeds are insufficient to convey the legal title, and thereafter each member, either by conveyances to third parties, or by other acts, asserts title to the part described by his deed, by reason whereof, and of subsequent subdivisions, grants, descents, and frauds, the title becomes much involved, equity will decree a partition, giving to each member the part so claimed by him, and confirming to his grantees thereof, and their representatives, such parts as they have purchased from him.

**2. CORPORATIONS—GIFT OF STOCK—PARTITION OF CORPORATE LANDS.**

Where one of the promoters of a land company enters the name of a woman upon the books of the company as a subscriber for stock, without any action on her part, and afterwards pays her assessments, and assumes to represent her in all the transactions of the company, a subsequent conveyance of the land in common to the stockholders, in proportion to the amount of stock owned by each, carries a valid, legal, and equitable title to such woman, and such promoter has no interest in her share.

In Equity.

This suit affects the title to a 60-acre tract of land, situated in the city of Tacoma, which title is, and for 20 years past has been, clouded by reason of blundering attempts of the owners to convey portions of said land, and interests therein. The object of the suit is to obtain a decree defining the interests of the several parties, remove the cloud, and partition the property among the owners, so as to give to each his portion thereof in severalty. The complainant in his bill alleges that he is a citizen of the state of California, and that all the defendants are citizens of the states of Oregon and Washington, except one, who is a subject of Great Britain; and the jurisdiction of this court is predicated upon the diverse citizenship of the parties. I have questioned whether it appears upon the face of the record that there is a controversy between citizens of different states involved in the case. The question forced itself upon my attention by reason of the attitude which the parties assumed towards each other at the time of the final hearing. In February, 1870, Louis C. Fuller and his wife and Clinton P. Ferry and his wife executed a warranty deed of this 60 acres of land to the Workingmen's Joint-Stock Association of Portland, Or., a corporation organized under the laws of the state of Oregon. About one year afterwards, a question having arisen as to the validity of a conveyance of real estate situated in Washington Territory to such a corporation, the grantors, to-wit, Fuller and Ferry and their wives, and said corporation, joined in a conveyance of the property by a quitclaim deed to the several stockholders of said corporation, 14 in number, who, for the sake of convenience, will be hereafter referred to as the "syndicate." In said quitclaim deed the interests of the several grantees is defined as follows: "To said William Brown, 39-464; to George Luviney, 65-464; and to each of the other twelve, 30-464." By the allegations of the parties in their pleadings, and the stipulations filed in this cause, the court is bound to treat this quitclaim deed as a valid conveyance, whereby a clear legal title to the whole of the property passed to and became vested in the 14 grantees as tenants in common. The title so acquired by each is acknowledged to be perfect in equity, except that of Anna Rodney. It is a disputed question in the case whether she took her interest in her own right, and for her own benefit, or whether Charles Howard, one of the syndicate, was the equitable owner of said interest. The facts are that said conveyance was made to the stockholders in exchange for their respective shares of the capital stock of the corporation, and it was intended that each should have an interest in the land in proportion to the shares formerly held. Anna Rodney was one of the stockholders, but she did not ac-

quire her interest by her own act, either in subscribing for stock, or contributing to the capital of the corporation; but Mr. Howard voluntarily caused her name to be entered on the company's books as a member, and he paid her assessments, and assumed to represent her in all the business transactions of the company. An inference may be reasonably drawn from the evidence that Mr. Howard's interest in Miss Rodney, which caused him to contribute to the capital of the company in her name, was founded upon an expectation on his part of forming a marriage alliance with her.

On the 5th day of September, 1871, an attempt was made to constitute one John W. Mathews attorney in fact for all the members of the syndicate, with power to sell and convey the land, and other land which the members owned and held in common, by an instrument which was properly executed, witnessed, and acknowledged by 11, and purported to have been executed in behalf of E. S. Simmons, one of the members, by one A. S. Gross, as attorney, whose authority to act as attorney for Simmons in the matter has not been established. The name of George Thomas, another of the three, appears to have been signed by one George P. Riley as "proxy." Proof of his authority to act for Mr. Thomas is also lacking. The instrument also bears the name of Anna Rodney, "per Charles Howard, her proxy." Howard assumed to act in her behalf without express authority from her, or any authority, except that he claimed the right to do so by reason of the facts hereinbefore recited. A few days after the date of this instrument, with the knowledge, assent, and active assistance of most of them, if not all the parties who in person signed it, and the aid of a blundering surveyor and an ignorant conveyancer, Mr. Mathews attempted to divide the tract into four-acre lots, and to convey one of said lots in severalty to each of the fourteen owners, except George Luviney, whose interest equaled two of them. The deeds given misdescribed the property, and were executed by Mathews as if he were the principal and grantor, and were generally defective. Nevertheless, they have an important bearing upon the case, because they at least show that an attempt was made 20 years ago to partition the tract in a particular way, by the voluntary acts of more than a majority of the owners. In March, 1873, with the manifest purpose of confirming the prior action, and to make valid conveyances, under the same power of attorney, instruments purporting to convey the title of all the others were executed to each of the 14 by Mr. Mathews, as attorney in fact. New complications, however, arise out of the fact that James H. Givens, one of the syndicate, died intestate during the interval between the dates of the first and second sets of conveyances. The deed for his lot was made to Mary A. Givens, his widow and sole heir. In addition to conveying one of the four-acre lots to Charles Howard, the deed given to him purports to convey also the lot described in the original deed to Anna Rodney, and it recites that said lot had been erroneously conveyed to Anna Rodney, and Mathews did not execute any other deed to her. Since the time of this attempt to partition the property, the parties have been assessed as owners in severalty of the

lots so conveyed to them, and they, or persons representing them, have paid all taxes or assessments levied thereon. The plaintiff has purchased and is the owner of the interest of said James H. Givens, which interest he acquired through a deed from said Mary A. Givens, and by virtue thereof he claims to have an undivided interest in the whole sixty-acre tract, or, if not such undivided interest, then he claims to own the particular four-acre lot described in said deed to his grantor. In the year 1888 the defendant Samuel Coulter purchased the interests of Anna Rodney and Charles Gilbert, and received from said Anna Rodney (now Anna Perry) and her husband, Daniel Perry, a bargain and sale deed of the entire 60-acre tract and another tract of land which had been owned by the syndicate. The Gilbert interest was conveyed to him by a deed from Joseph Sinton, grantee of George A. Gilbert, the brother and sole heir of Charles Gilbert, one of the syndicate, who died intestate in the year 1885, and by virtue of said deeds Mr. Coulter claims to be the owner of the undivided interests in the whole tract originally owned by said Rodney and Gilbert. The defendant John Donaldson, one of the members of the syndicate, who personally participated in the attempted partition, and accepted a deed executed by Mathews of one of the four-acre lots, a short time afterwards conveyed it by a warranty deed to the defendant H. C. Clement, who afterwards subdivided it, and by his warranty deeds conveyed portions thereof to John E. Burns and W. B. Kelly, and numerous subsequent deeds affecting the title to said lot have been made. But Donaldson, notwithstanding, claims that his deed was, in legal effect, only a conveyance of an undivided one-fifteenth interest in and to said four-acre lot, and he is now asserting ownership of an undivided one-fifteenth interest in and to all the remaining fifty-six acres, or what is equivalent to the fourteen-fifteenths of the four acres; which must, if he prevails, be taken from the parties entitled to the same, according to the terms of his deed and covenant. The defendant John Huntington, a member of the syndicate, has sold and conveyed portions of the four-acre lot awarded to him in the attempted partition, and still holds the remaining portion thereof, with which he appears to be satisfied, for he is not now proposing to repudiate any of his transactions or conveyances affecting the property. The defendant Louise M. Flower, as devisee named in the last will and testament of George Thomas, one of the syndicate, acquired all of his interest in the tract, and after his death she sold and conveyed a portion of the four-acre lot awarded to him, and now claims the remaining portion thereof. All of the other members of the syndicate asserted ownership in severalty of the particular lots described in the deeds to them made by Mathews, and afterwards sold and conveyed to different parties said lots, and numerous subsequent deeds affecting the title thereto have been executed and placed on record. William Brown, George P. Riley, Mary H. Carr, and Edward Simmons, members of the syndicate, who personally participated in the attempted partition, have, after selling, and giving deeds purporting to convey the titles in severalty to the particular lots described therein, for trifling, and, in some instances, merely nominal, considerations,

quitclaimed to the defendant H. C. Clement all the right, title, and interest which they respectively had in the 60-acre tract; and by virtue of said quitclaim deeds, and of a quitclaim deed from Philip Francis, and subsequent mesne conveyances, Mr. Clement claims to be the owner of an undivided 1352-5400 of the 60-acre tract. In his answer Mr. Clement asserts that the deeds given by his grantors prior to quitclaiming their interests to him were effective only to the extent of conveying their respective interests in the particular lots therein described; and in the argument of his counsel it is insisted that he is entitled to have the tract so partitioned that the prior grantees of his grantors shall each receive but a fragment of what they bargained for, to be carved out of the specific lots referred to in their deeds, so as to leave for him the full amount in quantity and value of the interest which he claims. To so partition the property, his share must, of course, be cut out of other portions of the tract. Philip J. Francis, one of the syndicate, after selling and conveying the particular lot awarded to him, gave a quitclaim deed of the whole 60-acre tract to the defendant C. A. Cove, who, by virtue thereof, claims to own an undivided one-fifteenth of the tract. The defendants Annie Van Ogle and John Carson purchased the two lots awarded to Charles Howard, representing the interests of said Howard and Anna Rodney, and, through deeds from said Howard, claim to have acquired the interest of Anna Rodney, which claim is antagonistic to Mr. Coulter.

*W. Scott Bebee,* for plaintiff.

*Watson, Hume & Watson, Fogg & Murray, John C. Stallcup, Finlay Bryan Galusha Parsons Dell Stuart,* and *W. S. Newbury,* for defendants.

HANFORD, J., *(after stating the facts.)* I have concluded to pass the question of jurisdiction with the simple announcement that, as able counsel have, after much labor in preparation, argued the questions of fact and law involved in the merits, and submitted the case without disputing the jurisdiction of the court, I will hold *pro forma* that, by bringing the suit, the plaintiff has assumed a position adverse to all the defendants, and challenged them to dispute his claim, and so there appears to be a controversy between citizens of different states, and the case is one which appears to have been properly brought in this court.

Considering the many conflicting claims, the numerous sales, deeds, covenants, mistakes, and errors made, given, and committed by the parties, and their delays and laches, the title to this tract of land is now so snarled, and equities, legal rights, and attempted frauds affecting it have become so interlaced, that it is simply impossible to adjust the rights of the parties by any method known to a court of law. The case is one requiring an application of the salutary principles of equity. I hold that the land has not been legally partitioned, either by an interchange of deeds between the co-tenants, or by parol; and it is necessary that it be now partitioned between the present owners according to the fairest plan which the court can devise, and that the court must consider all equities, and apply the rule requiring that he who demands equity

v.47f.no.12—49

must do equity. Freem. Cotenancy, (2d Ed.) § 505. It has not been asserted, either in the pleadings or arguments in this case, that a partition of the tract, as proposed and attempted in 1871, was unequal or unfair; and I am convinced that, as between the original 14, there could be no cause for dissatisfaction with it. The only way apparent to me by which justice can now be done, and the equities of each party respected, is by subdividing the tract as it was intended by Mathews to be subdivided, and awarding to each member of the syndicate the particular four-acre lot selected by or awarded to him or her, and heretofore claimed as his or her allotted share; and, further, to again subdivide and partition the several four-acre lots so far as necessary to confirm to the vendees of the members of the syndicate the specific ground purchased by them, respectively. I am aware that by this method of disposing of the case the court is, in effect, confirming a transaction between several parties which never became legally binding upon them; but in doing so, the court adheres strictly to well-recognized rules of equity practice. Courts of equity, in partitioning land, when it can be done without injustice, endeavor to award the co-tenants who have improved, and so increased in value, particular parts of an estate, the portions thereof embracing such improvements; and, by the same rule, to allot to co-tenants who have, by commission of waste, impaired the value of particular parts of an estate, the parts thereof so wasted. Freem. Cotenancy, §§ 305, 509, 510. I hold that, for obvious reasons, the same rule should govern in a case where a co-tenant has sold, received pay for, and given a pretended conveyance of title to, a particular part of a tract of land, and thereby laid a foundation for adverse claims and litigation likely to be injurious to all concerned, especially if he has bound himself by covenants to defend his vendee's title; and that the portion to which said adverse claims have attached should be allotted to such offending co-tenants in all cases where it can be done without injustice to the other co-tenants. Id. § 205; *Emeric* v. *Alvarado*, (Cal.) 27 Pac. Rep. 356. By this plan, Mr. Donaldson will take nothing in addition to the fruits of his own voluntary contract, which he has heretofore received, and with which in equity he should be content; but his vendees will be protected, instead of being robbed for his benefit of 14-15 of the property which they bought and paid for. Mr. Clement and Mr. Gove will take nothing, but they have no ground for complaint in a court of conscience. The quitclaim deeds which they hold only place them in the shoes of their grantors with respect to the property, and they, if now before this court, would occupy positions similar to that of Mr. Donaldson. The plaintiff and Mr. Coulter will not take the same undivided interests which they purchased, but they will receive just what they have prayed for in this suit; that is to say, a portion of the property in severalty equal in value to their undivided interests.

In the argument it was urged, in opposition to the claims of the purchasers of the four-acre lots, or portions thereof, that they are not entitled to consideration, because by their own folly or neglect they suffered themselves to be victimized. It was insisted that, if the purchasers had

been prudent, they would have caused an examination of the public records to be made, and sought the advice of astute lawyers, by which means they could have learned that legally their grantors were not authorized to convey the respective lots, or any interest therein greater than an undivided 1-15 thereof. I have known similar arguments to be used with equal plausibility in defense of bunco operators, and other criminals, who for profit impose upon the credulous and unwary. It is not a good argument in behalf of any party, as a justification of an attempt to repudiate his contracts or previous representations.

For the reasons stated, the court will decree that the land be partitioned among the several owners thereof according to the plan indicated; and, for the sake of accuracy in arranging all matters of detail to be embodied in the final decree, the court will appoint a commission to make the partition, with power to incur all necessary expenses for a complete abstract of title and a plat of the ground, and, if necessary for the purpose of platting, may cause the land to be surveyed.

In regard to the interest formerly owned by Anna Rodney, it is my opinion that, whether her share of stock in the Workingmen's Joint-Stock Association was bestowed by Mr. Howard as a mere gratuity, or given in consideration of favors received or expected, it was her property. Her ownership of it in her own right was absolute at and prior to the time of the conveyance of the title to the members of the syndicate. As the transaction was really an exchange of stock for land, she became the absolute owner in her own right of the interest in the land conveyed to her, as she previously had been of the stock, and Mr. Howard could not, without her consent, or any act on her part, take back his present by divesting her of the real estate for which it had been exchanged. By the decree, her portion will be awarded to her vendee, instead of the vendees of Howard.